UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LaCEDRIC W. JOHNSON,<br><br>            Plaintiff,<br><br>       vs.<br><br>ISAAC GONZALEZ, et al.,<br><br>            Defendants. | 1:14-cv-01252-LJO-EPG-PC<br><br>ORDER FOR PLAINTIFF TO EITHER:<br><br>   (1)   FILE A SECOND AMENDED COMPLAINT,<br><br>   (2)   NOTIFY COURT THAT HE IS WILLING TO PROCEED WITH THE FIRST AMENDED COMPLAINT, ONLY ON THE CLAIMS FOR EXCESSIVE FORCE AND DENIAL OF ACCESS TO COURTS FOUND COGNIZABLE BY THE COURT, OR<br><br>   (3)   NOTIFY THE COURT THAT HE STANDS ON THE FIRST AMENDED COMPLAINT AS FILED<br><br>THIRTY DAY DEADLINE |

**I.   BACKGROUND**

LaCedric W. Johnson ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983.  On July 28, 2014, Plaintiff filed the Complaint commencing this action.  (ECF No. 1.)  On November 19, 2014, Plaintiff filed the First Amended Complaint as a matter of course under Fed. R. Civ. P. 15(a).  (ECF No. 10.)  The First Amended Complaint recites allegations of events occurring from September 18, 2012 through July 10, 2014 at Pleasant Valley State Prison, during which Plaintiff was

deprived of his personal property, including legal documents and religious items, harassed for filing a complaint in state court, prevented from appearing at scheduled telephonic court hearings, and subjected to beatings and pepper spray for not immediately removing his boxer shorts when ordered.  For the reasons described in this order, the Court finds that Plaintiff states cognizable claims for denial of access to courts and excessive force.  Plaintiff shall be given a choice to either proceed with these claims, file a Second Amended Complaint, or stand on the current complaint for review by the District Court.

Plaintiff's First Amended Complaint is now before the Court for screening.

## II. SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences."  Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 556 U.S. at 678.  While factual allegations are accepted as true, legal conclusions are not.  Id.

///

## III. SUMMARY OF FIRST AMENDED COMPLAINT

The events at issue in the First Amended Complaint allegedly occurred at Pleasant Valley State Prison (PVSP) in Corcoran, California, where Plaintiff is presently incarcerated in the custody of the California Department of Corrections and Rehabilitation (CDCR). Plaintiff names as defendants Correctional Officer (C/O) Isaac Gonzalez, C/O A. Martinez, and Sergeant J. Benavides (collectively, "Defendants"), who were all employed by the CDCR at PVSP at the time of the events at issue. Plaintiff's factual allegations follow.

On September 17, 2012, Plaintiff's personal property was packed into eight boxes in preparation for a move to Delta 4 segregation unit. The next day, defendant Martinez escorted Plaintiff to a holding cage. Defendants Gonzalez and Martinez informed Plaintiff that "we are going to break-down your property to six cubic feet." (First Amended Complaint at 3 ¶3.) Under California regulations, PVSP limits inmate property to six cubic feet when inmates are rehoused to Delta 4 Unit. Gonzalez and Martinez began discarding Plaintiff's personal, religious, and legal files. Plaintiff informed Martinez and Gonzalez that he had five active legal cases and they were infringing on his access to courts and property rights. Martinez became belligerent and stated, "If you can't show me a deadline, I'm throwing it away." (Id. at 4 ¶5.) Plaintiff explained that he was waiting on responses and has been litigating some of the cases for years. Gonzalez asked, "What can he keep?" and Martinez stated, "If it don't have a heading and a current date, throw it away." (Id. at 4 ¶6.) The two defendants threw away Plaintiff's personal documents, Social Security documents, religious materials, family obituaries, and legal documents. The Islamic religious materials that were discarded included a Holy Quran, and afterward Plaintiff was unable to perform daily readings of the Holy Quran for the duration of his Delta 4 unit stay, in excess of six months. Plaintiff asked whether his excess property could "be stored or sent home instead of being thrown away," but his request was denied. (Id.) Plaintiff asserts that California regulations forbid obstruction of access to courts and retaliation for bringing and maintaining legal claims, and require Defendants to give Plaintiff his legal files and retain his personal property while housed in segregation.

///

Plaintiff notified the courts and opposing counsels in his cases and requested extensions of time.  However, Plaintiff alleges that he was forced to settle his federal case 2:08-cv-01609-KJM-KJN because defendants discarded irreplaceable declarations of Nick Daley, now deceased, and Abraham Calderon, both eye-ear witnesses whose testimony would have strengthened his claims and could have provided leverage for a higher settlement or success at trial. Plaintiff also alleges that he was unable to pursue two appeals of habeas corpus cases, 11-16994 and 12-16655, at the Ninth Circuit, in which he challenged prison disciplinary due process violations, because Defendants discarded documentary evidence, reference materials and a brief.  In those cases, Plaintiff had suffered loss of 360 days good time credits and loss of visitation privileges.

Plaintiff also alleges that he suffered denial of his habeas corpus petition no. 12-0720-JST at the U.S. District Court for the Northern District of California challenging his current sentence, because he had no documents available to proceed on appeal.  The loss of documents hindered Plaintiff from assisting his counsel in presenting claims of unauthorized illegal excessive sentencing.  Plaintiff alleges that he cannot bring a further challenge to his sentence via habeas corpus because it would be denied as a "successive" petition.  (Id. at 6.)  Plaintiff is now serving the remainder of his sentence, which is in excess of a decade.  Plaintiff filed grievances against Martinez and Gonzalez for discarding his property and retaliation.[1]

On April 4, 2013, Plaintiff was released from Delta 4 unit and defendant Gonzalez was assigned security and escort duty.  Plaintiff's property was already packed when Gonzalez arrived at Plaintiff's cell, but it was heavy.  Gonzalez told Plaintiff, "I'm going to put you in the

---

[1] While Plaintiff alleges he was subject to retaliation, he does not indicate in the First Amended Complaint that he seeks to bring a retaliation claim. Plaintiff specifically brings only three claims, which do not include a retaliation claim. (ECF No. 10 at 13-15.) Moreover, the Court finds Plaintiff's allegations insufficient to state a retaliation claim because Plaintiff has not alleged facts showing a link between his protected litigation activities and the adverse actions against him.  Plaintiff shall be granted leave to amend if he wishes to bring a retaliation claim.  "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); accord Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012); Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

shower, lower B section, I'll take care of your property." (Id. at 7 ¶18.)  On the way to Facility B, Gonzales stated, "You had a lot of stuff so I placed it in two bags." (Id.)  When Plaintiff arrived at Facility B and inventoried his property, he found that he was missing six months worth of legal mail and a Georgetown Law Journal.  On April 12, 2013, the property officer [not a defendant] brought Plaintiff the remainder of his property that had been retained, consisting of three boxes out of the original eight.  Plaintiff filed a Staff Complaint against defendant Gonzales for retaliation, based on the confiscation of Plaintiff's legal mail.

On August 5, 2013, Plaintiff filed a state court action against Gonzalez and Martinez for conversion of property.  Facility B staff began harassing Plaintiff for filing the case, by conducting cell searches, making comments, and refusing to process legal mail.  On December 23, 2013, Plaintiff was scheduled to appear telephonically for a case management conference as ordered by state court Judge Kapetan.  Defendant Facility B Sergeant J. Benavides denied Plaintiff telephone access and did not make any provisions for Plaintiff to join the conference.  Plaintiff was able to schedule another telephonic conference without penalty, for January 6, 2014.  Plaintiff proceeded to the facility office and informed Sergeant Benavides of his scheduled conference.  Benavides said, "What are you here for?  We don't have anything here for you," denying Plaintiff access to court.

On January 29, 2014, during a controlled yard release with random pat downs conducted by Sergeant Benavides, Plaintiff realized he had forgotten to bring his identification card, which was required to leave the building.  Plaintiff asked the Building I tower officer for a cell unlock to retrieve it.  The tower officer ignored Plaintiff, and Officer Santos ordered Plaintiff to strip for an unclothed body search.  Plaintiff complied except for his boxer shorts while the officers searched his clothing and legal folder.  Santos ordered Plaintiff to remove his boxer shorts.  A female staff member entered the building looking in Plaintiff's direction, and Plaintiff said, "One moment out of respect for the female, I'm Muslim." (Id. at 9 ¶27.)  Santos immediately sprayed Plaintiff in the face with pepper spray.  Plaintiff stumbled blindly to the shower to rinse his eyes, and Santos began beating Plaintiff with his baton with rapid blows to his arms and legs.  Officer Leon sprayed Plaintiff in the face with mace.  Plaintiff placed his

head under the running water, and Santos again began beating Plaintiff across his wrist, arms, and shins. The emergency alarm was sounded and Sergeant Benavides and ten guards responded to the scene, yelling "Get down." (Id. at 10 ¶26.) Because of Plaintiff's injuries, he had difficulties complying with the order. The guards formed a skirmish line in front of the shower, and officers emptied six more canisters of pepper spray on Plaintiff, causing him to choke, gag and hyperventilate. Santos began beating Plaintiff across the arms and legs as he was trying to comply with the order, grabbed Plaintiff's ankles, and dragged him out of the shower. Sergeant Benavides jumped on Plaintiff's back and began beating him in the head and face and kicking him in the genitalia while yelling, "Stop resisting!" (Id.) Brutally beaten, Plaintiff was placed in too-tight cuffs, stripped naked, placed in a medical Stokes litter, and carried across the yard. He was slammed to the ground in a medical holding cage, and a spit mask was placed over his head, leaving him to suffocate, choking and gagging on his own fluids. Plaintiff was denied medical attention and taken to Delta 4 unit administrative segregation. He was found in the cell unresponsive and taken to medical, then referred to an outside hospital for testing and overnight observation. Plaintiff was charged with battery on an officer, to cover up the excessive force. Sergeant Benavides was in charge of documenting the incident. Plaintiff alleges that PVSP staff has a practice of using pat-down and unclothed body searches to engage targeted inmates in uncompromising situations, attack inmates, and make false charges of battery on an officer for harassment and reprisals. Plaintiff alleges that he was targeted because he was litigating civil lawsuits against PVSP guards Gonzalez and Martinez. Plaintiff also alleges that prison staff made calculated efforts to punish inmates for exercising their rights to seek redress from the government, by placing them in administrative segregation where their property is destroyed and they have restricted access to the law library.

     On February 5, 2014, Sergeant Benavides and Officer Santos forced Plaintiff to comply with the six cubic foot property limitation in Delta 4 segregation. Plaintiff suffered from severe trauma to his head and depression.

     State court Judge Kapetan scheduled an order to show cause hearing for Plaintiff's failure to appear at the January 6, 2014 telephonic conference which Sergeant Benavides had

prevented Plaintiff from attending. On February 20, 2014, Plaintiff voluntarily dismissed his case, without prejudice.

Plaintiff requests monetary damages, injunctive relief, declaratory relief, costs of suit, and attorney's fees.

## IV.   PLAINTIFF'S CLAIMS

### A.   42 U.S.C. § 1983

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983

"[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others

which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

Plaintiff brings three distinct causes of action against Defendants in the First Amended Complaint, for (1) denial of access to courts, (2) infringement on exercise of religion, and (3) violations of due process. (ECF No. 10 at 13-15.) The Court also finds that Plaintiff states a claim for excessive force.

### A. **Denial of Access to Courts**

Inmates have a fundamental constitutional right of access to the courts and prison officials may not actively interfere with Plaintiff's right to litigate. Lewis v. Casey, 518 U.S. 343, 346 (1996); Phillips v. Hust, 588 F.3d 652, 655 (9th Cir. 2009). Courts have traditionally differentiated between two types of access claims, those involving the right to affirmative assistance, and those involving inmate's right to litigate without *active interference*. Silva v. Di Vittorio, 658 F.3d 1090, 1102 (9th Cir. 2011) (abrogated on other grounds) (emphasis added).

Prisoners have the right to pursue claims that have a reasonable basis in law or fact without active interference. Id. at 1103-04 (finding that repeatedly transferring the plaintiff to different prisons and seizing and withholding all of his legal files constituted active interference) (*abrogated* on other grounds by Coleman v. Tollefson, -- U.S. --, 135 S.Ct. 1759 (2015)). The complaint should state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a)**,** just as if it were being independently pursued, and a like plain statement should describe any remedy available under the access claim and presently unique to it. Christopher v. Harbury, 536 U.S. 403. Mere inconvenience to Plaintiff resulting from lost, misplaced, or confiscated legal documents will not suffice to support a constitutional claim. Silva, 658 F.3d at 1103–04.

Defendants' actions must have been the proximate cause of actual prejudice to Plaintiff. Id. To state a viable claim for relief, Plaintiff must show that he suffered an actual injury,

which requires "actual prejudice to contemplated or existing litigation" by being shut out of court.  Nevada Dep't of Corr. v. Greene, 648 F.3d 1014, 1018 (9th Cir. 2011) (citing Lewis, 518 U.S. at 348, 351); Harbury, 536 U.S. at 415; Phillips, 588 F.3d at 655.

Construing Plaintiff's allegations generously, Weilburg v. Shapiro, 488 F.3d 1202, 1205 (9th Cir. 2007), the Court finds that Plaintiff states a cognizable claim for denial of access to courts against defendants Martinez and Gonzalez, for knowingly confiscating and destroying Plaintiffs' legal files, resulting in the dismissal of Plaintiff habeas corpus case, and against defendant Benevides for preventing Plaintiff from making his court calls.  The Court finds no other cognizable access to court claim against any other defendants.

**B.      Infringement on Free Exercise of Religion**

The protection of the Free Exercise Clause of the First Amendment is triggered when prison officials infringe upon the practice of an inmate's religion by preventing him from engaging in conduct that he sincerely believes is consistent with his faith; to be upheld, the impinging rule or regulation must be reasonably related to legitimate penological interests. Shakur v. Schriro, 514 F.3d 878, 884–85 (9th Cir. 2008).  Pursuant to RLUIPA, prison officials may not substantially burden an inmate's religious exercise unless the burden furthers a compelling governmental interest and does so by the least restrictive means.  Alvarez v. Hill, 518 F.3d 1152, 1156 (9th Cir. 2009) (quotation marks and citation omitted).

Plaintiff alleges that included within his confiscated property were religious materials, including his Holy Quran. Plaintiff alleges that the confiscation and destruction of those items burdened the exercise of his religion, in violation of the First Amendment.  Assuming the confiscation of Plaintiff's excess property led to the incidental destruction of religious items, as Plaintiff alleges, there is no support for a claim that Defendants acted to prevent Plaintiff from engaging in the practice of his religion.  Therefore, Plaintiff fails to state a claim for violation of his right to free exercise of religion.

**C.      Violation of Due Process – Confiscation of Property**

Prisoners have a protected interest in their personal property.  Hansen v. May, 502 F.2d 728, 730 (9th Cir. 1974).  However, while an authorized, intentional deprivation of property is

actionable under the Due Process Clause, see Hudson v. Palmer, 468 U.S. 517, 532, n.13, 4 (1984) (citing Logan v. Zimmerman Brush Co., 455 U.S. 422, 435-36 (1982)); Quick v. Jones, 754 F.2d 1521, 1524 (9th Cir. 1985), "[a]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available," Hudson, 468 U.S. at 533.

California Law provides an adequate post-deprivation remedy for any property deprivations. See Cal. Gov't Code §§ 810-895; Barnett v. Centoni, 31 F.3d 813, 816-17 (9th Cir. 1994). California's Government Claims Act[2] requires that a tort claim against a public entity or its employees be presented to the California Victim Compensation and Government Claims Board, formerly known as the State Board of Control, no more than six months after the cause of action accrues. Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950-950.2 (West 2006). Presentation of a written claim, and action on or rejection of the claim are conditions precedent to suit. State v. Superior Court of Kings County (Bodde), 32 Cal.4th 1234, 1245, 90 P.3d 116, 124, 13 Cal.Rptr.3d 534, 543 (2004); Mangold v. California Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995). To state a tort claim against a public employee, a plaintiff must allege compliance with the Government Claims Act. Bodde, 32 Cal.4th at 1245, 90 P.3d at 124, 13 Cal.Rptr.3d at 543; Mangold, 67 F.3d at 1477; Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 627 (9th Cir. 1988).

Plaintiff alleges that defendants Martinez and Gonzalez improperly confiscated Plaintiff's personal property, which indicates that the deprivation of property was intentional and unauthorized. Thus, Plaintiff's remedy would be found under California law. Plaintiff fails

---

[2] This Act was formerly known as the California Tort Claims Act. City of Stockton v. Superior Court, 42 Cal. 4th 730, 741-42 (Cal. 2007) (adopting the practice of using Government Claims Act rather than California Tort Claims Act).

to show compliance with California's Government Claims Act, and therefore his property claim is not cognizable under federal or state law.[3]

### D.  Eighth Amendment Excessive Force Claim

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ." Hudson v. McMillian, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." Id. (internal quotation marks and citations omitted). The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident. Id. at 9; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines *de minimis* uses of force, not *de minimis* injuries)). However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." Id. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind." Id. at 9-10 (internal quotations marks and citations omitted).

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7. "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Id. (internal quotation marks and citations omitted). "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." Id.

---

[3] Plaintiff is required to allege in his complaint that he has complied with, or is excused from, the claim presentation requirements of the Government Claims Act. State v. Superior Court (Bodde), 32 Cal. 4th 1234, 1239 (2004); Mangold v. California Public Utilities Com'n, 67 F.3d 1470, 1477 (9th Cir. 1995).

11

The Court finds that Plaintiff states an excessive force claim against Sergeant Benavides, Correctional Officer W. Leon, and Officer M. Santos.

## V. CONCLUSION AND ORDER

The Court has screened Plaintiff's First Amended Complaint and finds that it states cognizable claims against defendants Martinez, Gonzalez, and Benevides for denial of access to courts, and against defendants Benavides, Leon, and Santos for use of excessive force. Plaintiff fails to state any other claims against any defendant.

Plaintiff may either proceed with the First Amended Complaint on the claims found cognizable by the Court, file a Second Amended Complaint curing the deficiencies identified by this order, or stand on the First Amended Complaint as filed.[4] If Plaintiff chooses to file a Second Amended Complaint, that complaint will supersede the First Amended Complaint and the Court will screen the Second Amended Complaint in full.

Should Plaintiff choose to amend the complaint, the amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights, Iqbal, 556 U.S. at 678; Jones v. Williams, 297 F.3d 930, 934 9th Cir. 2002). Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 555). There is no *respondeat superior* liability, and each defendant is only liable for his or her own misconduct. Iqbal, 556 U.S. at 677. Plaintiff must demonstrate that each defendant *personally* participated in the deprivation of his rights. Jones, 297 F.3d at 934 (emphasis added). Plaintiff is advised that a short, concise statement of the allegations in chronological order will assist the Court in identifying his claims. Plaintiff should name each defendant and explain what happened, describing personal acts by the individual defendant that resulted in the violation of Plaintiff's rights. Plaintiff should also describe any harm he suffered as a result of the

---

[4] If Plaintiff chooses to stand on the First Amended Complaint as filed, the Magistrate Judge will recommend dismissal, by the District Judge, of the claims found noncognizable in this order.

violation. Plaintiff should note that although he has been given the opportunity to amend, it is not for the purpose of adding new defendants for unrelated issues.

If Plaintiff decides to file an amended complaint, he is advised that an amended complaint supercedes the original complaint, Lacey v. Maricopa County, 693 F. 3d 896, 907 n.1 (9th Cir. 2012) (*en banc*), and it must be complete in itself without reference to the prior or superceded pleading. Local Rule 220. Once an amended complaint is filed, the original complaint no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "Second Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a civil rights complaint form;
2. Within **thirty (30) days** from the date of service of this order, Plaintiff shall either:
    (1) File a Second Amended Complaint attempting to cure the deficiencies identified in this order,
    (2) Notify the Court in writing that he does not wish to file an amended complaint and is instead willing to proceed only on the access to courts claim against defendants Martinez, Gonzalez, and Benevides, and the excessive force claim against defendants Benavides, Santos, and Leon, or
    (3) Notify the Court in writing that he stands on the First Amended Complaint as filed, in which case the Court will issue findings and recommendations to the District Judge consistent with this opinion;
3. Should Plaintiff choose to amend the complaint, Plaintiff shall caption the amended complaint "Second Amended Complaint" and refer to the case number 1:14-cv-01252-LJO-EPG-PC; and

4. If Plaintiff fails to comply with this order, this action will be dismissed for failure to comply with a Court order.

IT IS SO ORDERED.

Dated: __**April 6, 2016**__                    /s/ Erica P. Grosjean
                                               UNITED STATES MAGISTRATE JUDGE